**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


| | |
|---|---|
| **JOHN F. DRESSING** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-CV-3941** |
| **BRIDGE ASSOCIATES, LLC** | **SECTION: "S" (5)** |


## ORDER AND REASONS

IT IS HEREBY ORDERED that this matter is REMANDED to the United States Bankruptcy

Court for reconsideration of the July 9, 2007, Order and the underlying motion to set aside judgment

granting objection to claimant's claims.

## BACKGROUND

This litigation began on January 7, 2005, when Torch Offshore, Inc. and related companies

("Debtors") filed voluntary petitions for relief under Chapter 11 in the United States Bankruptcy

Court in the Eastern District of Louisiana. On May 9, 2005, Dressing, a former engineer employed

with Torch, filed unsecured claims for $2 million arising from two separate slip and falls while

allegedly aboard a Torch vessel. On November 14, 2005, Dressing filed his proof of maritime lien

for $175,000.

Eventually, the Debtors filed their Plan for Reorganization ("Plan"), which, as modified,

became effective on July 14, 2006, at which time the Torch Liquidating Trust was created and Bridge Associates, LLC was appointed as the Plan Administrator. On October 13, 2006, the Plan Administrator filed objections to Dressing's claims, among others. The Plan Administrator sought to expunge and disallow Dressing's claims and asserted that Dressing's claims were contingent, unliquidated, unsupported, incomplete and otherwise deficient. Dressing, represented by counsel, received notice of the objection. On November 22, 2006, the Bankruptcy Court heard the objection. On December 4, 2006, the Bankruptcy Court entered an Order, sustaining the objection on its merits, and expunging and disallowing Dressing's claims.[1]

On April 11, 2007, Dressing filed a motion for relief from the automatic stay "to liquidate creditor's claim." Opposing the motion, the Plan Administrator asserted that the automatic stay had already terminated on the effective date of the Plan, and that Dressing was not entitled to modification of the permanent injunction provided in the plan since Dressing's claims had been expunged and disallowed.

On June 5, 2007, Dressing filed a motion to set aside judgment granting objection to claimant's claims, pursuant to Fed. R. Civ. P. 55(c) and 60(b). The Plan Administrator opposed, asserting that Dressing was not entitled to relief from the permanent injunction under the Plan and that there were inadequate grounds to set aside or modify the Order of December 4, 2006, sustaining the objections.

On June 27, 2007, the Bankruptcy Court heard extensive oral argument on Dressing's motion

---

[1]At that time, Dressing was being represented by counsel whom Dressing's current counsel asserts was impaired due to a substance abuse issue. Dressing's current counsel was retained some time in December 2006.

to set aside judgment and motion for relief.  Counsel for the Plan Administrator proposed modification of the December 4, 2006, Order to recognize only Dressing's non-maritime lien and Jones Act claims, which was acceptable to Dressing's counsel and the Bankruptcy Court.  The Bankruptcy Court ordered the parties to prepare an order.[2]  On July 9, 2007, the Order was entered and on July 11, 2007, Dressing filed his Notice of Appeal.  Notwithstanding the agreement, Dressing urges that now relief is justified, *inter alia*, because of newly acquired information regarding the possible unavailability of insurance coverage, an issue which the Bankruptcy Court had not considered.

---

[2]Of particular note to this appeal is the following colloquy at the end of the oral argument:

MR. CAPLINGER:     What you could in fact do is grant the Motion to Set Aside in part and set aside that potion of the judgment – of the other order that disallowed and expunged Mr. Dressing's non-maritime lien claim.  So, the maritime lien claim is still gone.

THE COURT:     All right, but --

MR. CAPLINGER:     The underlying claim - -

THE COURT:     - - I still want him to waive any deficiency.  I don't want him coming back here with a deficiency.  I don't want him coming back here with a deficiency whether it's a maritime lien or not a maritime lien.

MR CAPLINGER:     Your Honor, I think as far as the - - the only procedures that are set forth in the Plan regarding deficiencies relate to maritime lien issues.  If someone has a deficiency claim, they basically get thrown in the pro rata pot with everybody else, and, you know, we can deal with that.  Hopefully, we won't have to, but we can deal with that at that point.  But it would in fact exclude forever Regions or any other secured lender from having to consider this, you know, as non-final.

THE COURT:     All right.  All right, well --

MR. KOERNER:     That seems like a sensible, articulation –

THE COURT:     All right.

MR. KOERNER:     - - of what you just suggested.

**ANALYSIS**

Title 28 of the United State Code, Section 158(a)(1) provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders and decrees." However, it is well established that an issue is not preserved for appeal when it was not presented to, or considered by, the bankruptcy court.[3]

Dressing argues in this court for the first time that he has newly obtained evidence of the possible unavailability of insurance coverage for Dressing's slip and fall damages. He argues that the remedy which was agreed to at the hearing was no remedy at all, and that had the bankruptcy judge been aware of the information, perhaps the Bankruptcy Judge's ruling on all issues would have been different. The Bankruptcy Court has not considered this issue; hence, there is no decision for this court to review in this regard.[4]

Accordingly, the case is REMANDED to the United States Bankruptcy Court to reconsider its July 9, 2007, Order and the underlying motion to set aside judgment granting objection to claimant's claims, and determine whether Dressing's claim regarding the unavailability of insurance proceeds justifies relief under  Fed. R. Civ. P. 60(b).

---

[3]*See Matter of Quenzer,* 19 F.3d 163, 164 (5th Cir. 1993); *Matter of Gilchrist,* 891 F.2d 559 (5th Cir. 1990). *See also United States v. Williams,* 156 B.R. 77, 81 (S.D. Ala. 1993)("This court's function on appeal from a Bankruptcy Court's determination is to reverse, affirm or modify only those issues that were presented to the trial judge."); *Rogers v. Morin*, 189 Fed. Appx. 299, 304 (5th Cir. 2006)(finding that debtor in bankruptcy could not raise factual issues relative to hardship for the first time on appeal, *citing Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)).

[4]The court notes that according to the advisory committee notes for Fed. R. Bankr. P. 9024, bankruptcy courts can review its rulings and orders subject to Fed. R. Civ. P. 60, and that reconsideration of orders allowing and disallowing claims is governed by Fed. R. Bankr. P. 3008. *See generally, In Re Rankin*, 141 B.R. 315 (Bankr. W.D. Tex. 1992).

New Orleans, Louisiana, this ___7th___ day of February, 2008.


_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**